IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In the Matter of:                    )

ALL-STAR MEDICAL, LLC.        )
EIN: XX-XXX2851              )      CASE NO. 17-82507-CRJ11

           Debtor.        )      CHAPTER 11

## DEBTOR'S FOURTH AMENDED CHAPTER 11 PLAN
## OF REORGANIZATION DATED MARCH 30, 2018

In accordance with 11 U.S.C. § 1127, All-Star Medical, LLC, Debtor and Debtor-in-possession ("Debtor") in the above captioned Chapter 11 case files this Fourth Amended Chapter 11 Plan of Reorganization Dated March 30, 2018 ("Plan"), in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court").

### I.

### DEFINITIONS

The following terms shall have the following meanings unless the context otherwise requires and, unless otherwise indicated, the singular shall include the plural. The definitions contained in §§ 101 and 1101 of the Bankruptcy Code shall control unless different definitions are stated herein, in which case the definitions as stated herein shall control for purposes of this Plan.

1.01 **"Accounting Fees"** means accounting and/or administrative management fees for preparing tax returns and other financial reports.

1.02 **"Administrative Expense Claim"** means a Claim for any cost or expense of administration of the Reorganization Case allowed under § 503(b) of the Bankruptcy Code, including without limitation any Claim for the actual and necessary costs and expenses of preserving the Debtor's estate and all allowances of compensation or reimbursement of

expenses to the extent allowed by the Bankruptcy Court.

**1.03** **"Administrative Expense Claims Bar Date"** means the date set by the Bankruptcy Court as the last day for filing all requests for payment of Administrative Expense Claims.

**1.04** **"Allowed Amount"** means the amount of any Allowed Claim.

**1.05** **"Allowed Claim"** means:

(A) Any Claim in any Class:

      (i)     proof of which has been filed with the Bankruptcy Court prior to the Bar Date, or which has been scheduled by the Debtor and not shown as disputed, contingent, or unliquidated; and

      (ii)    to which no objection has been made within the Disclosure Statement or to which no objection is filed no later than thirty (30) days after the Effective Date or which has been allowed by Final Order; or

(B)    Any Administrative Claim for which a motion or fee application has been filed and approved by the Court.

**1.06** **"Allowed Secured Claim"** means a Claim that is both an Allowed Claim and a Secured Claim.

**1.07** **"Allowed Unsecured Claim"** means a Claim that is both an Allowed Claim and an Unsecured Claim.

**1.08** **"Bankruptcy Code or Code"** means Chapter 11 of Title 11, United States Code.

**1.09** **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

**1.10** **"Bankruptcy Rule"** or **"Bankruptcy Rules"** means one or more of the Federal Rules of

Bankruptcy Procedure.

**1.11**    **"Bar Date"** means the date established by the Court as the deadline for filing all Claims. The Court scheduled December 1, 2017, as the Bar Date for all claimants to file proofs of claim, including governmental units and/or agencies. Claims filed after the Bar Date, which are not otherwise Allowed Claims, will be disallowed and of no effect.

**1.12**    **"Claim"** means a claim or interest as defined by the Code.

**1.13**    **Intentionally Omitted**.

**1.14**    **"Class"** means one of the classes of Allowed Claims or equity interests established by the Plan.

**1.15**    **"Confirmation Date"** means the date on which the Court pursuant to § 1129 of the Bankruptcy Code enters the Confirmation Order.

**1.16**    **"Confirmation Order"** means the Final Non-Appealable Order of the Court determining that the Plan meets the requirements of the Bankruptcy Code and is entitled to confirmation.

**1.17**    **"Court"** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

**1.18**    **"Debtor"** means All Star Medical, LLC.

**1.19**    **"Effective Date"** means the date on which the Confirmation Order becomes a Final Order.

**1.20**    **"Filing Date"** with respect to the Debtor means August 24, 2017, the date on which the Reorganization Case was commenced by the Debtor filing for relief under Chapter 11 of the Bankruptcy Code.

**1.21**    **"Final Decree"** means the Order entered by the Bankruptcy Court which closes the case.

**1.22** **"<u>Final Order</u>"** means:

    A.    An order of the Court that has become conclusive of all matters adjudicated by such order and:

        (i)    that is not the subject of a pending appeal and for which the time to appeal or seek review or rehearing of such order has expired, or

        (ii)    that is the subject of a pending appeal but has not been stayed or as to which no supersede as bond has been posted.

**1.23** **"<u>IRS</u>"** means the Internal Revenue Service.

**1.24** **"<u>Plan</u>"** means this Plan of Reorganization and any subsequent amendments.

**1.25** **"<u>Post-Petition</u>"** means the Filing Date and the period after the Filing Date.

**1.26** **"<u>Pre-Petition</u>"** means the period preceding the Filing Date.

**1.27** **"<u>Priority Claim</u>"** means those expenses and claims which may be provided for under 11 U.S.C. § 507 of the Code.

**1.28** **"<u>Proponent</u>"** means Debtor.

**1.29** **"<u>Pro-rata Share</u>"** means the same proportions that a given Allowed Claim within a Class bears to the total Allowed Claim of such Class.

**1.30** **"<u>Reorganization Case</u>"** with respect to the Debtor means the reorganization case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on or about August 24, 2017, and pending in the Bankruptcy Court under Case No. 17-82507-CRJ11.

**1.31** **"<u>Secured Claim</u>"** means a Claim allowed as secured in the real or personal property of Debtor.

1.32 "**Unsecured Claim**" means an allowed Claim other than an Administrative Expense Claim, Priority Claim, or a Secured Claim.

## II.

### CLASSES AND CLASSIFICATIONS OF CLAIMS AND INTEREST

1.0 **Secured Claims:**

    1.01   **Progress Bank and Trust**: This Class consists of the Secured Claim of Progress Bank and Trust

    1.02   **Progress Bank and Trust**: This Class consists of the Secured Claim of Progress Bank and Trust.

    1.03   **Invacare Credit Corp**: This Class consists of the Secured Claim of Invacare Credit Corp.

    1.04   **Balboa Capital Corporation**: This Class consists of the Secured Claim of Balboa Capital Corporation.

    1.05   **Wells Fargo Equipment Finance Inc.**: This Class consists of the Secured Claim of Wells Fargo Equipment Finance Inc.

    1.06   **Wells Fargo Equipment Finance Inc.**: This Class consists of the Secured Claim of Wells Fargo Equipment Finance Inc.

    1.07   **Wells Fargo Vendor Financial Servicing**: This Class consists of the secured claim of Wells Fargo Vendor Financial Servicing.

    1.08   **De Lange Laden**: This Class consists of the secured claim of De Lange Laden.

    1.09   **Navitas**: This class consists of the secured claim of the Navitas.

**1.10** **TCF Equipment Finance a/k/a TCF National Bank**: This class consists of the secured claim of TCF Equipment.

**1.12** **VGM Financial, LLC.:** This class consists of the secured claim of VGM Financial.

**2.0** **Non-Priority General Unsecured Claims.**: This Class consists of all Allowed Unsecured Claims.

**3.0** **Equity Interest Holder**: This Class consists of the equity shareholders of the Debtor which consists of Mr. Phil Garmon who owns Ninety Seven percent (97%); Mallory Garmon (1%); Abby Garmon (1%) and Mandy Garmon (1%). Together these shareholders own 100% of the issued and outstanding stock in the Debtor and are its equity interest holders.

**III.**

**IMPAIRMENT AND TREATMENT OF CLAIMS UNDER THE PLAN**

The Plan will be summarized by incorporation of pertinent portions. Other provisions of the Plan are extremely important, especially Article I, Definitions. The Plan should be read in full.

**1.0** **Secured Claims:**

**1.01** **Progress Bank and Trust**: This Class consists of the Allowed Secured Claims of Progress Bank and Trust ("Progress") in the approximate amount of $699,710.32 which are impaired. This claim is evidenced by two promissory notes, which are secured by a lien on the Debtor's equipment, inventory and accounts receivables pursuant to an commercial loan agreement. Debtor will pay, settle and satisfy this debt as follows: Debtor will pay Progress the sum of $7,254.92 commencing on the Effective date of the Plan and continuing each month thereafter for sixty

months. This payment includes interest at 5% per annum. Thereafter, commencing the sixty first (61) month Debtor shall pay the remaining balance to Progress in consecutive monthly payments for a period of sixty four (64) months with interest calculated at Prime + 1%. Progress will retain its lien upon this collateral until such time as the debt is paid in full.

1.02 **Progress Bank and Trust**: This Class consists of the Allowed Secured Claim of Progress Bank and Trust in the approximate amount of $4,336.87 and is impaired. The Claim of Progress is secured by a lien on a 2014 Chevrolet Express Van. Debtor shall commence monthly payments to Progress in the amount of $371.28 per month for twelve months commencing on the Effective date of the Plan and continuing each month thereafter until the Debt is paid in full. This claim includes interest at 5% per annum. Progress will retain all liens upon its collateral until such time as the debt is paid in full.

1.03 **Invacare Credit Corporation**: This Class consists of the Secured Claims of Invacare Credit Corporation ("Invacare") in the approximate amount of $26,751.66 and is impaired. Invacare is secured by a lien on equipment pursuant to an equipment finance agreement. Debtor will settle and satisfy this debt by making monthly payments to Invacare in the amount of $510.99 per month for sixty months commencing on the Effective date of the Plan and continuing each month thereafter until the Debt is paid in full. This claim includes interest at 5.5% per annum. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**1.04** **Balboa Capital Corporation:** This Class consists of the Secured Claim of Balboa Capital Corporation ("Balboa") in the approximate amount of $43,589.15 and is impaired. Balboa is secured by a lien on the Debtor's, respiratory medical equipment. Debtor will pay, settle and satisfy this debt by making monthly payments in the amount of $2,400.00 per month commencing on December 19, 2017 and continuing each month thereafter until the Debt is paid in full. This claim includes interest at the contract rate. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**1.05** **Wells Fargo Equipment Finance Inc.:** This Class consists of the Secured Claim of Well Fargo Equipment Finance Inc. ("Wells Fargo") in the approximate amount of $1,847.88 and is impaired. Wells Fargo is secured by a 2012 Chevrolet Express Van. Debtor will pay, settle and satisfy this debt through the payment of $467.28 per month for four months commencing on the Effective date of the Plan and continuing each month thereafter until the Debt is paid in full. This claim includes interest at 5.5% per annum. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**1.06** **Wells Fargo Equipment Finance Inc.:** This Class consists of the Secured Claim of Well Fargo Equipment Finance Inc. ("Wells Fargo") in the approximate amount of $1,863.70 and is impaired. Wells Fargo is secured by a 2011 Chevrolet Silverado. Debtor will pay, settle and satisfy this debt through the payment of $471.28 per month for four months commencing on the Effective date of the Plan and continuing each month thereafter until the Debt is paid in full. This claim

includes interest at 5.5% per annum. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**1.07** **Wells Fargo Vendor Financial Services, LLC**: This Class consists of the Secured Claim of Well Fargo Vendor Financial Services, LLC ("WFVF") in the approximate amount of $4,786.64 and is impaired. WFVF is secured by lien upon a Sharp copier and other equipment pursuant to a finance lease agreement. The debtor will pay, settle and satisfy this claim through the monthly payment of $810.62 per month for six months commencing on the effective date of the Plan and continue each month thereafter until the debt is paid in full. This claim includes interest at 5.5%. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**1.08** **De Lange Landen**: This class consists of the secured claim of De Lange Landon in the approximate amount of $16,376.42 and is impaired. The claim of De Lange Laden claim is secured by equipment owned by the debtor. The Debtor will pay, settle and satisfy this debt by amortizing it over 60 months with interest at 5.5% in monthly payments of $312.81. Payments will commence upon the Effective Date of the plan and will continue on the first day of each month thereafter until the debt is paid in full. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**1.09** **Navitas:** This class consist of the secured claim of Navitas in the approximate amount of $12,528.50 and is impaired. Navitas claim is secured by equipment owned by the debtor. The debtor will pay, settle and satisfy this debt by amortizing

it over 60 months with interest at 5.5% in monthly payments of $239.30 per month. Payments will commence upon the Effective Date of the plan and will continue on the first date of each month thereafter until the debt is paid in full. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

1.10. **TCF Equipment Finance a/k/a TCF National Bank**: This class consists of the claim of TCF equipment Finance aka TCF National Bank in the amount of $18,109.43 and is impaired. TCF is secured by certain medical equipment owned by the Debtor. Debtor will pay, settle and satisfy this debt by amortizing it over a period sixty months in monthly installments of $345.91 commencing on the Effective Date of the Plan and continuing each month thereafter until the Debt is paid in full. This claim includes interest at 5.5% per annum. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

1.11. **VGM Financial LLC:** This class consists of the secured claim of VGM financial LLC in the approximate amount of $18,530.18 and is impaired. VGM is secured by equipment owned by the debtor. Debtor will pay settle and satisfy this debt by amortizing it over 60 months with interest at 5.5% in monthly payments of $353.94 per month. Payments will commence upon the effective date of the plan will continue on the first day of each month thereafter until the debt is paid in full. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

2.0 **Non-priority Unsecured Claims**: This class consists of all allowed general unsecured claims which are impaired. The total amount of unsecured claims in this case exceeds

$850,000.00.  The claims are of every kind and nature including claims arising from personal guarantees, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims and damages arising from or related to any liquidated or contingent claim.  It also includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court.  Holders of general unsecured claims without priority which are Allowed Claims as determined on or before the Effective Date of the Plan shall be paid on a pro rata distribution. Payment to the creditors in this class shall be made from the Debtors future net income.

Debtor reasonably believes that creditors in this class will receive a distribution equal to no less than 15% percent and as high as 25% of their Allowed Claim over a period of five years from the Effective Date of the Plan.  As noted above, the actual amount paid to unsecured creditors will vary since Allowed Unsecured Claims are paid on a pro-rata basis once all Allowed Unsecured Claims are determined. Allowed Claims in this class shall receive monthly payments starting on the Effective Date of the Plan over a period of sixty consecutive months.  These payments will be weighted so that the majority of the payments made to creditors in this class will be made during years 2-5 of the Debtor's plan. Exhibit "E" to the Disclosure Statement shows Net Income from which payments to Allowed Unsecured Claims will be paid.

**3.0  <u>Equity Interest Holder</u>:**  This Class consists of the equity shareholders of the debtor which consists of Phil Garmon who owns Ninety Seven percent (97%), Mallory Garmon (1%), Abbey Garmon (1%) and Mandy Garmon (1%). Together they own all of the

outstanding stock in Debtor.   The claim of the equity interest holders is impaired. The Garmon's will retain their equity interest in the Debtor, they shall not, however, receive a distribution based on his Claim under the Plan until allowed administrative, priority and unsecured claimants have been paid or otherwise satisfied as provided for herein.

**TREATMENT OF UCLASSIFIED ADMINISTRATIVE
EXPENSES AND PRIORITY TAX CLAIMS**

**Administrative Expense Claims:**

**1.01**   **Heard, Ary & Dauro, LLC:** This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan unless otherwise agreed upon by the parties.

**Priority claims:**

**2.1**   **Internal Revenue Service**: This Class consists of the Allowed Priority Claims of the Internal Revenue under §507(a)(8) of the Bankruptcy Code.   The amended claim for pre-petition tax debt filed by the IRS in the sum of $106,876.56 shall be allowed as filed.

The unsecured priority amount of the claim in the sum of $87,549.85 shall be amortized over a period of five (5) years at the Internal Revenue Code interest rate of four percent (4.00%). This amount shall be payable in sixty (60) monthly payments by the Debtor remitting to the IRS equal monthly payments in the sum of $1,612.36. The first payment shall be due on or before May 1, 2018 and subsequent payments shall be due on the 1st day of each monthly thereafter until said debt has been paid in full.

The unsecured general portion of the IRS claim of $19,376.71 shall receive a distribution in accordance with class 2.0 above. This amount shall be payable in sixty (60) monthly payments. The first payment shall be due on the effective date and subsequent payments shall be due on the

1st day of each monthly thereafter until said debt has been paid in full.

In the event the Debtor fails to remit any monthly payment on the unsecured priority or the general unsecured claim as each payment becomes due or pay the request for payment of administrative expense as set for therein, the automatic stay will be considered terminated and the IRS may proceed with its legal and/or administrative remedies to collect any and all sums due on its amended claim.

The Debtor shall timely file any and all post-petition federal Form 941 tax returns beginning with the Form 941 for the tax period ended March 31, 2018 and the Form 940 tax return for the tax period ended December 31, 2018 by the due date for each respective tax period. Upon the filing of the applicable Form 941 and Form 940 tax returns beginning with the Form 941 for the tax period ended March 31, 2018 and the Form 940 tax return for the tax period ended December 31, 2018 to the extent there is a balance due the IRS, the Debtor shall remit the balance due at the time the return is filed with the IRS.

During the pendency of the repayment period for the pre-petition tax debt owed to the IRS, in the event the Debtor fails to timely file any and all post-petition federal Form 941 tax returns beginning with the Form 941 for the tax period ended March 31, 2018 and the Form 940 tax return beginning with the tax period December 31, 2018 and remit any balance due the IRS; the automatic stay will be considered terminated and the IRS may proceed with its legal and/or administrative remedies to collect any and all sums due on its amended claim and any post-petition liability.

For the tax periods listed on the claim filed by the IRS, the time periods found at 26 U.S.C. §§ 6503(b) and 6503(h) are tolled during the term for repayment stated in this plan.

The IRS tax debt for the tax periods listed on the IRS claim shall not be the subject of any discharge entered in this case until the Debtor has complied with the terms of the repayment for the unsecured priority debt, the general unsecured debt of the IRS debt and any post-petition liability as set for herein.

For the tax periods listed on the amended claim, the time periods found at 11 U.S.C. § 507(a)(8) are tolled during the term for repayment stated in this plan.

The IRS reserves the right to adjust the amount of its claim if it determined through the IRS administrative process that the amounts due on any tax period listed on the IRS claim are due to be adjusted.

**IV.**

**PROVISIONS FOR REJECTION AND ASSUMPTION
OF EXECUTORY CONTRACTS**

Pre-petition the Debtor was a party to a non-residential lease with Skinner Properties, pursuant to which it leased the property located in Cullman, AL. The Debtor will either negotiate a new lease for this facility or its will reject its lease with Skinner. The Debtor is in the process of negotiating new leases for its locations in Albertville and Huntsville.

Additionally, the Debtor also rejected its contract with Philips medSage, a division of Respironics Inc. Debtor is not aware of any additional executory contracts or unexpired leases to which it is a party. To the extent such exists it is to be rejected upon confirmation. All parties to any executory contract or lease rejected shall have thirty (30) days from the date of the Order Rejecting the Lease or Confirmation Date, whichever is earlier, in which to file a claim for damages, if any, resulting from such rejection or such claims will be disallowed and will not be

eligible to participate in distributions under this Plan.

**V.**

**MEANS OF EXECUTION OF THE PLAN**

**5.01    Means of Implementation of the Plan.**    Debtor will implement the terms of the Plan by making payments to creditors from Debtor's post-petition net income.  By restructuring its Debt, the Debtor has increased the likelihood of the success of the Plan.  The Pro Forma Budget submitted by the Debtor as Exhibit E to the Disclosure Statement and the Debtor's operating statements filed with this Court support the Debtor's ability to make the plan payments and therefore the plan is feasible.  Debtor shall also execute such additional documents as are necessary to comply with the terms of the Plan.

**5.02    Execution of All Documents**.  The Plan authorizes the Debtor to execute all documents necessary to carry out the terms of the Plan.

**5.03    Objections to Claims and Allowance**.  No payment or distribution shall be made to the holder of a Claim against which an objection has been filed within thirty (30) days of the Effective Date until any such objection to a Claim has been determined by Final Order of the Court.  Disputed and unliquidated Claims shall be estimated for purposes of voting and unless the Court orders otherwise, payments to holders of contested claims that are subsequently allowed shall be made in accordance with the terms of the Plan.  Contest of Claims shall be filed with the Court no later than sixty (60) days after the Effective Date.

**5.04    Amendments to Claims and Requests for Payment of Administrative Expense Claims; Claims Filed After the Bar Dates**. Unless otherwise provided in a Final Order of the Bankruptcy Court:

(a)        after the Bar Date, a Claim on account of which a Proof of Claim is not timely filed in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or an Order of the Bankruptcy Court, may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the face amount or priority;

(b)        except as otherwise provided herein, after the Administrative Expense Claims Bar Date, a Claim on account of which a request for payment of Administrative Expense Claim is not timely filed may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the face amount or priority; and

(c)        Except as otherwise provided in the Plan, any new or amended Claim filed after the Bar Date or the Administrative Expense Claims Bar Date (as applicable) shall be deemed Disallowed in full and expunged without any action by the Plan Proponent, unless the holder of such Claim has obtained prior Bankruptcy Court authorization for the filing. The holder of a Claim which is disallowed pursuant to this Section 5.04 shall not receive any distribution on account of such Claim.  The Plan Proponent shall file with the Bankruptcy Court and serve on the holder of any Claim whose Claim is deemed Disallowed pursuant to this Section 5.04, but whose Proof of Claim or request for payment of an Administrative Expense Claim is subsequently deemed timely filed or Allowed notwithstanding this Section 5.04 by a Final Order of the Bankruptcy Court, any Objection to such Claim or request for estimation thereof within sixty (60) days (or such later date as the Bankruptcy Court shall approve) after any such order becomes a Final Order.

    **5.05    Retention of Assets**.  Except as provided for in the Plan, or in the order confirming

the Plan, on the Confirmation Date, the Debtor shall be vested with all of the property of the estate, and the Debtor shall retain all property rights free and clear of all liens, charges, and other interests of the creditors.

**VI**.

**MODIFICATION AND CONFIRMATION OF THE PLAN**

**6.01** **Pre-Confirmation Modifications**.  Debtor may propose modifications hereof at any time prior to Confirmation without leave of this Court, upon such notice as may be required by this Court.  If such modification is made after acceptance hereof, this Plan as so modified shall be deemed accepted by all holders of Claims and Equity Interests that have previously accepted this plan, provided that this Court finds that such modification would not materially and adversely change the treatment of the holders of Claims or Equity Interests that have not accepted such modification in writing.

**6.02** **Post-Confirmation Modifications**.

(a)       Except as provided in Subsection (b) of this section, Debtor may modify this Plan after Confirmation only if this Court determines that this Plan as so modified meets all of the requirements for confirmation.

(b)       Notwithstanding Subsection (a) of this section, the Debtor may modify this Plan during the period between the Confirmation Date and the "substantial consummation," provided that this Court determines only that such modification does not materially and adversely change the treatment of Claims or Equity Interests but merely remedies a defect or omission or reconciles an inconsistency in or between this Plan and/or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect hereof.

**6.03**     <u>**Effect of Confirmation.**</u>

(a)     Upon Confirmation, the provisions hereof shall bind the Debtor and each holder of a Claim whether or not (1) the Claim of such holder is impaired hereunder, or (2) such holder has accepted this plan.

(b)     Except as otherwise provided herein or in the Confirmation Order, Confirmation vests all of the property of the estate in Debtor, free and clear of all Claims.

(c)     Except as provided for in § 1141(d)(5), Confirmation discharges the Debtor from any debt that arose before the Confirmation Date and any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim is filed with respect thereto, (2) the debt appears in the schedules of liabilities filed by the Debtor, (3) the debt is allowed, or (4) the holder of such debt has accepted this Plan.

(d)     Confirmation shall constitute approval or ratification by this Court of the assumption or rejection of the Debtor's executory contracts and unexpired leases pursuant to Section IV hereof.

(e)     Confirmation shall constitute approval by this Court of all financing arrangements, leases, contracts, and other actions that the Debtor proposes in the Disclosure Statement or herein, to enter into, make, or take in connection with implementation hereof, including the execution of any documents as of the Effective Date.

**VII**

**<u>DISCHARGE</u>**

Except as otherwise provided in the Plan or in the Confirmation Order, confirmation creates a discharge effective as of the date of entry of the Confirmation Order, of any and all debts

of the Debtor that arose at any time before the Confirmation, including but not limited to, all principal and interest, whether accrued before or after the Filing Date, pursuant to § 1141 (d) (1) and 506 (d) of the Code.  The discharge shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed, whether the Claim is an allowed claim, or whether the holder thereof votes to accept the Plan.  The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests of any nature whatsoever. All creditors shall be precluded from asserting against the Debtor or its assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the Confirmation Date.

**VIII**

**RETENTION, ENFORCEMENT AND WAIVER OF CLAIMS**

**8.1**     Pursuant to § 1123(b) (3) of the Code, the Debtor shall retain and may enforce any and all claims of the Debtor except claims waived, relinquished, or released in accordance with the Plan.

**8.2**     No party in interest except the Debtor shall maintain or commence an action to recover a preference as defined in § 547(b) of the Code after the Confirmation Order is entered.

**8.3**     Contests of Claims shall be filed with the Court not later than thirty (30) days after the Effective Date.

**IX.**

**JURISDICTION OF THE COURT**

**9.01**     **Continuing Jurisdiction**.  The Court shall retain and have exclusive jurisdiction over the Reorganization Case for the following purposes:

(a)     To determine any and all objections to the allowance of Claims or Interests;

(b)     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(c)     To determine any applications or motions pending on the Effective Date for the rejection, assumption, or assumption and assignment of any executory contract and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

(d)     To determine any and all applications, adversary proceedings, and contested matters that may be pending on the Effective Date;

(e)     To consider any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in any Order of the Court, to the extent authorized by the Court;

(f)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or that may involve or affect the value of assets of the Company administered by the Plan;

(g)     To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor arising under or in connection with the Plan;

(h)     To issue such orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(i)     To enforce the workout agreement;

(j)     To determine such other matters as may be set forth in any order or orders confirming the Plan or which may arise in connection with the Plan or any other Order or Orders confirming the Plan.

## X.

## MISCELLANEOUS PROVISIONS

**10.1    Prior Court Orders.**  All prior orders entered by the United States Bankruptcy Court for the Northern District of Alabama are hereby incorporated by reference, including their terms, conditions, benefits, requirements and obligations.

**10.01    Cramdown.**   With respect to any class not accepting the Plan, the Proponent does hereby request confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code on the grounds that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims that are impaired.

**10.2    Quarterly Fees.**  The Debtor will be making its quarterly fees to the Bankruptcy Administrator pursuant to 28 U.S.C. § 1930.  Debtor will continue to make these payments as required post-petition.

**10.3    Compliance with Tax Requirements.**  In connection with the Plan, the Debtor will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**10.4    Retention of Liens.**  Each creditor whose claim is secured by a lien or mortgage on property of the Debtor shall retain such lien or mortgage until such creditor's claim is paid in full according to the treatment proposed under the Plan at which time the lien shall be released.

**10.5** **Employment and Payment of Professionals**.

(a)      During the period between the Confirmation Date and the Effective Date, Debtor may (1) continue to avail itself of the services of professional persons whose employment was approved at or prior to Confirmation in completing the administration of this case and in the consummation and performance hereof, and (2) if necessary and with the approval of this Court, employ additional professional persons to render such services.

(b)      With respect to services rendered and expenses incurred in or in connection with this case during such period by any such professional person, the professional person may render periodic billings therefore to the Debtor and the Debtor shall promptly pay the same, but each such payment shall be subject to review and approval by this Court as to the reasonableness thereof in the manner prescribed by Subsection (a) of this section.

**10.6**      **Notice of Hearing and Motions Post Confirmation.**  Upon confirmation of the Plan, all of the motions, and applications for compensation to professionals, and notices of such hearings shall be limited to the Debtor, Bankruptcy Administrator and any party of interest directly affected by such motion or application.

**10.7**      **Satisfaction of Claims.**  The rights afforded in this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Allowed Claims, liens and encumbrances of any nature whatsoever, including any interest accrued thereon from and after the Filing Date, against the Debtor or any of its assets; and, except as otherwise provided herein, on Confirmation, all such Allowed Claims against the Debtor or its assets, any other or further Allowed Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to Confirmation are satisfied, discharged and released.

# XI.

## CLOSING OF CASE

**11.01  Procedure for Closing Case**.  If the Court concludes that a hearing on such motion would be appropriate, such hearing shall be conducted upon notice only to the Debtor, the Bankruptcy Estate Administrator, and persons specially requesting notices at the hearing on confirmation.

Respectfully submitted on this 30th day of March, 2018.

By: *Phil Garmon*_____
    All-Star Medical, LLC.


*/s/ Kevin D. Heard*_____
Kevin D. Heard
Attorney for Debtor

HEARD, ARY & DAURO, LLC
303 Williams Avenue SW
Park Plaza Suite 921
Huntsville, Alabama 35801
Phone:  (256) 535-0817
Fax:  (256) 535-0818
kheard@heardlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of March, 2018, I served a copy of the foregoing **Debtor's Fourth Amended Chapter 11 Plan of Reorganization Dated March 30, 2018,** on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**

Richard Blythe
Richard_Blythe@alnba.uscourts.gov; courtmailann@alnba.uscourts.gov

Chad Ayers
Atttorney for Progress Bank
cayres@wilmerlee.com

C. Stephen Alexander, alalwyer@aol.com
Counsel for Invacare Corporation;

Richard E. O'Neal on behalf of United States of America Department of Treasury - Internal
Revenue Service  USAALN.BANKRUPTCY@usdoj.gov

Alexandra K. Garrett
agarrett@silvervoit.com, notices@silvervoit.com

Alto Lee Teague
lteague@ehjlaw.com

Haley K Tucker
haley@kkslawgroup.com

**Notice will not be electronically mailed to:**

**All parties on the attached matrix were served via U.S. Mail.**

*/s/ Kevin D. Heard*
Kevin D. Heard